IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEN DIGITAL, INC., <br><br>    Plaintiff, <br><br>  v. <br><br> SYCOMP, A TECHNOLOGY COMPANY, INC., et al., <br><br>    Defendants. | Case No. 24-cv-04106-CRB <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

This action arises out of contracts that Defendants North American Systems International and Sycomp, a Technology Company allegedly entered into with Plaintiff Gen Digital (formerly known as Symantec).  Plaintiff alleges (1) that each Defendant entered into a written agreement with Plaintiff to provide IT-related services and (2) that both Defendants—plus a third entity, Terix— subsequently entered into a partly oral and partly written contract that Plaintiff calls the "Solaris Patching Agreement."  Plaintiff alleges that Defendants breached their contractual obligations by failing to indemnify Plaintiff after it was forced to indemnify a third party for intellectual-property infringement.  Defendants move to dismiss the bulk of Plaintiff's claims.  For the reasons below, the Court **GRANTS** both Defendants' motions in full.

I.    **BACKGROUND**

At the pleading stage, the Court accepts as true all factual allegations in the Complaint.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  The Court finds that two additional documents—Sycomp's Product Purchase Agreement, or PPA, (dkt. 26, Ex. A) and North American's Service Delivery Agreement, or SDA (dkt. 22-1)—are incorporated by

reference. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

### A.     The Relevant Players

Plaintiff is a software company now known as Gen Digital, though it was called "Symantec" during most of the events giving rise to this litigation. Compl. (dkt. 1) ¶¶ 3–4, 10. Defendants Sycomp and North American are companies that provided IT-related services to Plaintiff starting in 2010 and 2012, respectively. Id. ¶¶ 6–7, 12, 18.

Plaintiff contracted with Sycomp to provide various software and hardware support and consulting services, PPA § 4.1, Ex. D, and with North American to provide on-site hardware maintenance and remote (by phone) software technical support, SDA §§ 2.9–2.10, 2.13, 3.0–3.4. Plaintiff's contracts with both Defendants contained indemnification provisions that required them to indemnify Plaintiff against claims that their products or services infringed upon or misappropriated third parties' intellectual-property rights. PPA § 9.2; SDA § 13.0. Both contracts also contained integration clauses. PPA § 11.17; SDA § 17.9. The clause in Sycomp's contract (but not in North American's) precludes any modifications to the contract other than those reduced to a written amendment signed by both parties. PPA § 11.17; SDA § 17.9.

Defendants were not the only companies that provided IT-related services to Plaintiff. From 2007 onward, Plaintiff outsourced its IT maintenance to Hewlett Packard Enterprise Services (HPES). Id. ¶ 10. Plaintiff contractually agreed to indemnify HPES against certain legal actions. Id. ¶ 11. HPES, for its part, helped Plaintiff maintain its software for operating systems like Solaris (which was then owned by Sun Microsystems, and which has since been acquired by Oracle Corporation). Id. ¶¶ 10, 16.

Plaintiff, in an effort to find a cheaper alternative to Oracle's expensive IT-maintenance services for Solaris operating systems, reached out to its contacts at Sycomp—who in turn referred Plaintiff to yet another IT company, Terix, in February 2013. Id. ¶¶ 17, 24. A Sycomp representative informed Plaintiff that Terix "can 100% patch any Sun devices under their support up to Solaris Version 10," and Terix assured Plaintiff that it had licenses to do so. Id. ¶ 24, 26. A series of emails, phone calls, and

meetings among representatives from Plaintiff, Sycomp, North American, and Terix followed.  Id. ¶¶ 25–34.  Ultimately, in March 2013, Sycomp sent Plaintiff a quote for "renewal of maintenance for assorted server and storage equipment," and Plaintiff shortly thereafter issued a purchase order to Sycomp.  Id. ¶¶ 29, 32–33.

### B. The Intellectual-Property Lawsuits

In July 2013, Oracle sued Terix for alleged unauthorized use of Oracle's software and software support materials, including Solaris operating system patches.  Id. ¶ 42; see also Compl., Oracle Am., Inc. v. Terix Computer Co., Case No. 13-cv-3385-PSG (N.D. Cal. July 19, 2023).  Then, in March 2016, Oracle sued HPES for installing Solaris patches (which Terix had provided) for Plaintiff.  Compl. ¶¶ 49–51; see also Compl., Oracle Am., Inc. v. Hewlett Packard Enter. Co., Case No. 16-cv-1393-JST (N.D. Cal. Mar. 22, 2016).  This lawsuit against HPES went to trial in May 2022, and in June 2022 the jury rendered a verdict that HPES infringed Oracle's copyrights (and was liable on related claims).  Compl. ¶¶ 54–55.  HPES and Oracle then entered into a confidential settlement agreement, and Oracle dismissed the action.  Id. ¶ 56.

HPES, which had initially informed Plaintiff of the pending lawsuit against it in July 2015, requested in November 2022 that Plaintiff indemnify it.  Id. ¶¶ 49, 57.  Plaintiff, in turn, requested that Defendants indemnify it against HPES's indemnity request in December 2023.[1]  Id. ¶¶ 50, 58.  They did not do so.  Id. ¶ 58.  While Plaintiff was waiting for Defendants to indemnify it, HPES sued Plaintiff for breach of contract arising out of Plaintiff's failure to indemnify HPES.  Id. ¶ 59.  Plaintiff initially filed a third-party complaint against Sycomp and NASI in that action, but ultimately dismissed that complaint and filed this standalone action instead.  Id. ¶¶ 60–61.[2]

---

[1] Based on the timeline of events as laid out in the Complaint, the Court believes there may be a typographical error in the Complaint and that Symantec likely placed its indemnity demand in December 2022 (not 2023).  That does not affect the outcome of these motions.

[2] Sycomp asks the Court to take judicial notice as to various documents filed in HP's lawsuit against Plaintiff, captioned DXC Technology Co. v. Gen Digital, Inc., Case No. 23-cv-4818-EJD (N.D. Cal.).  These documents are, indeed, subject to judicial notice.  Harris v. County of Orange, 682 F.3d 1126, 1131–32 (9th Cir. 2012).  That said, the Court does not see any need to refer to those documents for purposes of these motions to dismiss.

### C. Procedural History

Plaintiff now sues Sycomp and North American, bringing three counts of breach of contract:

- Count 1: that Sycomp breached its written PPA, id. ¶¶ 62–69;
- Count 2: that North American breached its written SDA, id. ¶¶ 70–77; and
- Count 3: that both Defendants breached a separate "partly oral and partly written contract," called the "Solaris Patching Agreement," that they and Terix entered into with Plaintiff in March 2013, id. ¶¶ 78–90.

Sycomp and North American both move to dismiss various of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must "accept the plaintiff['s] allegations as true and construe them in the light most favorable to the plaintiff[]," but it need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III. DISCUSSION

North American moves to dismiss Counts 2 and 3, while Sycomp moves to dismiss only Count 3.

### A. Count 2: The North American SDA

NASI argues that Plaintiff's breach of contract claim based on the SDA fails for three reasons: (1) the SDA required Plaintiff, not North American, to maintain current licenses and provide operating system upgrades; (2) North American did not provide any

services that infringed on third parties' intellectual-property rights (and would thus trigger the indemnification clause); and (3) other entities' promises cannot bind North American to indemnify Plaintiff beyond what the SDA provides.  The Court agrees with North American on its second argument and does not reach the first or third argument.

The SDA states that North American would provide four "Services" to Plaintiff:

- "On-site Hardware Support," which consists of "the service of providing a field engineer … who performs fault diagnosis, replaces defective components, and otherwise returns the hardware to normal functional status."  SDA §§ 2.9, 3.1.
- "Shared Maintenance providing an unlimited number of Advance Exchanges," which consist of providing "replacement spare part[s] in exchange for [] defective part[s] of the same part number, or Equivalent." Id. §§ 2.6, 3.2.
- "Operating System Software Support," which consists of "telephone technical support" including "system administration support, recommendations regarding patch and bug fix updates, and the troubleshooting of operating system problems." Id. §§ 2.10, 3.3.
- "Telephone Technical Support," which consists of "toll-free call center telephone hotlines … for access to service, support triage, dispatch service, escalation and engineering support over the telephone." Id. §§ 2.13, 3.4.

In its Complaint, Plaintiff alleges that these provisions of the SDA define the "services provided by NASI." Compl. ¶ 21.

Count 2 of Plaintiff's complaint fails because none of these services "infringe or misappropriate the [intellectual property rights] of any third party." SDA § 13.0.  The crux of Oracle's lawsuit against HPES—which Plaintiff was required to indemnify—was that "Terix provided Solaris patches to Plaintiff for older Solaris servers, which [HPES] then ultimately installed for Plaintiff, … and that such conduct constituted copyright infringement." Compl. ¶ 49.  The SDA does not, however, contemplate North American

5

1  providing "patches"³ as part of its contractual obligations to Plaintiff. And because
2  Plaintiff does not allege that the services North American actually contracted to provide—
3  hardware support, part exchanges, and telephone support—infringed on Oracle's
4  intellectual property rights or were the basis of Oracle's litigation against HPES, the SDA
5  does not require North American to indemnify Plaintiff.

Plaintiff, in response, focuses on language from North American's motion to dismiss where North American contends that it is a hardware company that does not, and has never, provided software update or patch installation services. NASI Opp. (dkt. 31) at 15–16 (quoting NASI Mot. (dkt. 22) at 21–25). Plaintiff is, of course, correct that the Complaint's factual allegations, not North American's, are accepted as true at the pleading stage. Khoja, 899 F.3d at 1003. But North American's overreach in its motion does not change the SDA's language, which limits North American's duty to indemnify Plaintiff to the "Services" enumerated in the contract. SDA § 13.0.⁴

Because the services that North American provided under the SDA did not result in the infringement or misappropriation of any third party's intellectual property rights, North American did not breach its contract when it failed to indemnify Plaintiff. The Court therefore **GRANTS** the motion to dismiss Count 2.

### B.  Count 3: The "Solaris Patching Agreement"

Both Sycomp and North American move to dismiss Count 3, but on different grounds. Sycomp argues that Count 3 fails because the "Solaris Patching Agreement" was an impermissible modification of the PPA, not a new contract that can give rise to a standalone breach-of-contract claim. North American argues that Plaintiff failed to allege facts sufficient to establish that the "Solaris Patching Agreement" was a valid contract, particularly noting Plaintiff's sparse allegations with respect to acceptance, definite terms, and consideration.

---

³ Patches are modifications to computer programs (i.e., software). See, e.g., Patch, Merriam-Webster, https://www.merriam-webster.com/dictionary/patch.
⁴ Nor do statements made by third parties expand North American's duty to indemnify under the SDA, a point that Symantec seems to concede. NASI Opp. at 16.

**Sycomp.** The PPA—Plaintiff's contract with Sycomp—states that no terms "that are in addition to or inconsistent with the terms of this Agreement … shall have any force or effect … unless such terms are expressly agreed to by [Plaintiff] in the form of a written amendment to this Agreement signed by both parties." PPA § 11.17.  By including this provision in the PPA, Plaintiff and Sycomp required that any modification to the PPA be made in writing—even though California law permits oral modifications to a written contract.  See Busch v. Globe Indus., 200 Cal. App. 2d 315, 320 (1962).  Plaintiff expressly alleges that the "Solaris Patching Agreement" was not entirely in writing, see Compl. ¶¶ 36, 79, and nowhere even suggests that Plaintiff and Sycomp signed it.

Instead, Plaintiff argues that the "Solaris Patching Agreement" was an entirely new contract and thus did not have to follow the modification procedures that the parties had agreed to in the PPA.  See Sycomp Opp. (dkt. 32) at 12–14.  In support, Plaintiff contends that this new agreement "cover[ed] new services and a whole new type of relationship." Id. at 12–13.  Not so.  Sycomp (unlike North American) contracted with Plaintiff to provide precisely the kind of IT-support services that would encompass those contemplated by the "Solaris Patching Agreement."  See PPA § 4.1(a), Ex. D (listing "patches" as a product that Plaintiff could purchase from Sycomp).  Any future agreement to provide the same or similar services merely "introduces new elements into the details of the contract" while "leav[ing] the general purpose and effect undisturbed."  Grant v. Aerodraulics Co., 91 Cal. App. 2d 68, 74 (1949).[5]

Because the "Solaris Patching Agreement" is not a standalone contract, but instead an invalid attempt to modify the PPA, alleged obligations under that agreement cannot

---

[5] Symantec's argument that "a contract may incorporate the terms of another," Sycomp Opp. at 13, is beside the point.  Whether the "Solaris Patching Agreement" incorporates the PPA's terms has no bearing on whether that agreement is a contract modification or a brand-new contract.  If anything, the cases that Symantec cites for this principle make the "Solaris Patching Agreement" look more like a modification, given that they involved the incorporation of terms of service from generic form documents, not prior contracts between the same parties.  See Douglass v. Serenivision, Inc., 20 Cal. App. 5th 376, 392–93 (2018) (contract incorporated a "master advertiser Agreement"); In re Holl, 925 F.3d 1076, 1084 (9th Cir. 2019) (contract incorporated various terms and conditions of service).

7

1  give rise to a breach of contract claim.  The Court therefore **GRANTS** the motion to
2  dismiss Count 3 as to Sycomp.
3        **North American.**  North American contends that Plaintiff failed to adequately
4  allege that the "Solaris Patching Agreement" is a valid contract between it and Plaintiff.
5  North American identifies three elements of a contract that are supposedly missing:
6  (1) mutual assent, (2) sufficiently definite contractual terms, and (3) consideration.  NASI
7  Mot. at 9 (citing Rockridge Tr. v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1142 (N.D.
8  Cal. 2013)); id. at 14–15.  North American is correct: Plaintiff has not met its pleading-
9  stage burden of alleging facts that would establish that the "Solaris Patching Agreement"
10 is, in fact, a valid contract.
11       Several cases help clarify what kinds of allegations are sufficient to allege a
12 contract.  In Kuhn v. Three Bell Capital, the court dismissed a breach-of-contract claim
13 where the Complaint "allege[d] only that 'a contract was formed,'" did "not consistently
14 identify the parties to the contract, and thus fail[ed] to provide clear guidance as to" which
15 individuals "were counterparties to a contract with [the plaintiff]."  698 F. Supp. 3d 1119,
16 1124 (N.D. Cal. 2023).  In Ladas v. California State Automobile Ass'n, the court found an
17 alleged employment contract unenforceable when it was merely an "amorphous promise to
18 'consider' what employees at other companies [were] earning."  19 Cal. App. 4th 761, 771
19 (1993).  On the other hand, in Yu v. Design Learned, Inc., the court denied a motion to
20 dismiss a breach-of-contract claim where the plaintiff "allege[d] the existence of a contract
21 (which he attache[d] to the complaint), the parties thereto … , and the material terms."
22 2016 WL 3541046, at *5 (N.D. Cal. June 29, 2016).
23       The allegations in Plaintiff's complaint are closer to Kuhn and Ladas than to Yu.
24 Plaintiff alleges a "partly oral and partly written Solaris Patching Agreement with
25 Defendants, acting in concert as partners, for the provision of certain IT maintenance
26 services and software."  Compl. ¶ 79.  But Plaintiff never fleshes out with factual
27 allegations the nature of each party's promise—whether that be the contractual obligations
28 of each Defendant (and Terix), the consideration that Plaintiff would owe each Defendant,

8

or even how or when each Defendant actually agreed to be bound by the alleged contract. In particular, Plaintiff never alleges that North American expressly agreed, orally or in writing, to the "Solaris Patching Agreement." Nor does Plaintiff ever allege that North American took actions that would imply the existence of a contract.

Plaintiff repeatedly suggests that Sycomp, North American, and Terix were in a "partnership," apparently as a way to hold North American liable for the actions of Sycomp and Terix. But it is not clear whether Plaintiff means this allegation in a legal sense such that Sycomp and Terix's actions would be imputed to North American. And in any case, such an allegation would be conclusory given the lack of factual allegations that North American either agreed to, delivered on, or participated in the terms and aims of the partnership. See, e.g., Smith v. 9W Halo W. OpCo L.P., 2023 WL 3047383, at *3 (N.D. Cal. Apr. 20, 2023) (dismissing claims for failure to distinguish between "partnership defendants"). The closest Plaintiff gets is alleging that North American, along with Sycomp and Terix, prepared and delivered a PowerPoint presentation in which Sycomp and North American "represented to [Plaintiff] that they were Terix resellers with 'over 10 years of partnership.'" Compl. ¶ 34. But while Plaintiff alleges that Sycomp resold Terix products to Plaintiff, see id. ¶¶ 33, 41, Plaintiff never alleges that North American resold Terix products to Plaintiff. Any potential reseller relationship between North American and Terix is not related to the allegations in this case—at least not based on the Complaint.

Because Plaintiff fails to allege facts sufficient to state a claim that North American was a party to (and, in turn, breached) the "Solaris Patching Agreement," the Court **GRANTS** the motion to dismiss Count 3 as to North American.

### IV. CONCLUSION

For the foregoing reasons, the Court **DISMISSES COUNTS 2 AND 3 WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: September 27, 2024



CHARLES R. BREYER
United States District Judge

9