IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEN DIGITAL, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SYCOMP, A TECHNOLOGY COMPANY, INC., et al.,<br><br>　　　　　Defendants. | Case No. 24-cv-04106-CRB<br><br>**ORDER GRANTING MOTIONS TO DISMISS COUNTS TWO, THREE, FOUR, AND FIVE OF FIRST AMENDED COMPLAINT** |

　　　　Plaintiff Gen Digital (formerly known as Symantec) sues Defendants Sycomp, a Technology Company and North American Systems International for breach of contract. Plaintiff alleges that it entered into separate written agreements with each Defendant under which Defendants would provide IT-related services and promised to indemnify Plaintiff in the event that those services infringed on any third party's intellectual property rights. Plaintiff, now on the hook for copyright infringement, seeks indemnification from Defendants under several alternate theories: breach of its written contracts with Sycomp (count one) and NASI (count three), breach of its written contracts as orally amended with Sycomp (count two) and NASI (count four), and breach of a partly oral and partly written contract among all three parties—plus another IT company, Terix—that Plaintiff calls the "Solaris Patching Agreement" (count five).  Sycomp moves to dismiss counts two and five, while NASI moves to dismiss counts three, four, and five.

　　　　The Court finds this matter suitable for resolution without a hearing pursuant to Local Civil Rule 7-1(b) and **GRANTS** both motions in full without leave to amend.

## I. BACKGROUND

At the pleading stage, the Court accepts as true all factual allegations in the amended complaint. Cruz v. Beto, 405 U.S. 319, 322 (1972). The Court finds that two additional documents—Sycomp's Product Purchase Agreement, or PPA, (dkt. 46, Ex. A), and NASI's Service Delivery Agreement, or SDA (dkt. 22-1)—are incorporated by reference. See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

### A. The Relevant Players

Plaintiff is a software company now known as Gen Digital, though it was called "Symantec" during most of the events giving rise to this litigation. Am. Compl. (dkt. 42) ¶¶ 3–4, 10. Defendants Sycomp and North American are companies that provided IT-related services to Plaintiff starting in 2010 and 2012, respectively. Id. ¶¶ 6–7, 12, 17–18.

Plaintiff entered written contracts with Sycomp and NASI. See PPA, SDA. Under these written contracts, Sycomp was to provide various software and hardware support and consulting services, PPA § 4.1, Ex. D, and NASI was to provide on-site hardware maintenance and remote (by phone) software technical support, SDA §§ 2.9–2.10, 2.13, 3.0–3.4. Both contracts contained indemnification provisions that required Defendants to indemnify Plaintiff against claims that their products or services infringed upon or misappropriated third parties' intellectual-property rights. PPA § 9.2; SDA § 13.0. Both contracts also contained integration clauses. PPA § 11.17; SDA § 17.9. The clause in Sycomp's contract (but not in North American's) precludes any modifications to the contract other than those reduced to a written amendment signed by both parties. PPA § 11.17.

Defendants were not the only companies that provided IT-related services to Plaintiff. From 2007 onward, Plaintiff outsourced its IT maintenance to Hewlett Packard Enterprise Services (HPES). Am. Compl. ¶ 10. As part of its contract with HPES, Plaintiff agreed to indemnify HPES against certain legal actions. Id. ¶ 11. HPES, for its part, helped Plaintiff maintain its software for operating systems like Solaris (which has since been acquired by Oracle Corporation). Id. ¶¶ 10, 16.

1   Plaintiff, looking for a cheaper alternative to Oracle's expensive IT-maintenance
2   services for Solaris operating systems, reached out to its contacts at Sycomp. Id. ¶ 17.
3   Sycomp, in turn, referred Plaintiff to Terix, another IT company, in February 2013. Id.
4   ¶ 24. A Sycomp representative, Caron Rakich, told Plaintiff that Terix could provide
5   "patches"[1] for Solaris operating systems. Id. ("Terix can 100% patch any Sun devices
6   under their support up to Solaris Version 10"). Around the same time, NASI also
7   recommended that Plaintiff obtain Solaris patches from Terix. Id. ¶¶ 18, 25.

8   Based on Sycomp's referral and NASI's recommendation, Plaintiff reached out to
9   Terix to obtain Solaris patches. Id. ¶ 25. Over multiple phone calls and emails, a Terix
10  representative assured Plaintiff's employees that Terix had the necessary licenses for its
11  Solaris patches. Id. ¶¶ 26–29. Plaintiff does not allege that either Sycomp or NASI
12  represented that Terix had these licenses. And while Plaintiff does allege that Sycomp and
13  NASI were "aware of" Terix's representations "at the time they were made" but "never
14  repudiated, contradicted, or even questioned them," Plaintiff never alleges a factual basis
15  for this—for instance, that Sycomp or NASI representatives were on the phone calls or
16  email chains where Terix discussed its licenses. Id. ¶¶ 27, 29.

17  Ultimately, in March 2013, Sycomp (purportedly "in partnership with Terix and
18  NASI") sent Plaintiff a quote for "renewal of maintenance for assorted server and storage
19  equipment." Id. ¶ 30. This quote states that its terms are "subject to Symantec/NASI/
20  Sycomp Master Agreement." Id. Rakich also sent Plaintiff an email stating that the SDA
21  constitutes "the fully executed terms and conditions which [Sycomp is] able to operate
22  under with NASI/Terix." Id. ¶ 31 (alteration in original). Plaintiff alleges that NASI was
23  "aware of" these representations and did not "repudiate[], contradict[], or even question[]"
24  them—though once again, Plaintiff does not provide a factual basis for this. Id.

25  In April 2013, Plaintiff issued a purchase order to Sycomp, the funds from which it
26  understood would be shared between Sycomp, NASI, and Terix. Id. ¶¶ 34, 39. Plaintiff

---

[1] Patches are modifications to computer programs (i.e., software). See, e.g., Patch, Merriam-Webster, https://www.merriam-webster.com/dictionary/patch.

alleges that it intended this purchase order to be an acceptance of Defendants' offer to have Terix "obtain the Solaris Patches" and Sycomp and NASI "assist in obtaining the patches from Terix and act as liaisons … to facilitate the installation of the Solaris Patches." Id. ¶ 38. So, Plaintiff alleges, "Terix provided Symantec with the Solaris Patches," and Sycomp and NASI acted "in concert with Terix" by "communicat[ing] with Symantec to assist in the delivery of the Solaris Patches and oversee the process by which Symantec could request and receive Solaris Patches from Terix." Id. ¶ 40. Plaintiff describes this framework as the "Solaris Patching Agreement"—a "partly oral and partly written" four-party agreement between itself, Sycomp, NASI, and Terix. Id. ¶ 41.

Also in April 2013, Plaintiff asked Rakich to "provide … the Terms and Conditions that we are operating under with the [Terix] contract," specifically asking for the indemnification clauses. Id. ¶ 45. Rakich responded by identifying section 13 of the SDA and section 9.1 of the PPA. Id. ¶¶ 46–47. Rakich forwarded Plaintiff's email to NASI and Terix asking which company was responsible for indemnification, but Plaintiff does not allege that either responded. Id. ¶ 46.

### B.     The Intellectual-Property Lawsuits

In July 2013, Oracle sued Terix for alleged unauthorized use of Oracle's software and software support materials, including Solaris operating system patches. Id. ¶ 50; see also Compl., Oracle Am., Inc. v. Terix Computer Co., Case No. 13-cv-3385-PSG (N.D. Cal. July 19, 2023). This case culminated in a stipulated judgment whereby Terix would pay Oracle $57.7 million for copyright infringement and various other claims. Am. Compl. ¶ 56. Four Terix executives, including one who had communicated directly with Plaintiff, were also convicted of fraudulently obtaining intellectual property from Oracle and using that intellectual property to support Terix customers. Id. ¶ 57.

Then, in March 2016, Oracle sued HPES for installing Terix's Solaris patches for Plaintiff. Compl. ¶¶ 58–60; see also Compl., Oracle Am., Inc. v. Hewlett Packard Enter. Co., Case No. 16-cv-1393-JST (N.D. Cal. Mar. 22, 2016). This lawsuit against HPES went to trial in May 2022, and in June 2022 the jury rendered a verdict that HPES

4

infringed Oracle's copyrights (and was liable on other, related claims). Am. Compl. ¶¶ 63–64. HPES and Oracle then entered into a confidential settlement agreement, and Oracle dismissed the action. Id. ¶ 65.

HPES, which had initially informed Plaintiff of the pending lawsuit against it in July 2015, requested in November 2022 that Plaintiff indemnify it. Id. ¶¶ 58–59, 66. Plaintiff, in turn, requested that Defendants indemnify it against HPES's indemnity request in December 2022. Id. ¶ 67. They did not do so. Id. While Plaintiff was waiting for Defendants to indemnify it, HPES's successor sued Plaintiff for breach of contract arising out of Plaintiff's failure to indemnify. Id. ¶ 68. Plaintiff initially filed a third-party complaint against Sycomp and NASI in that action, but ultimately dismissed that complaint and filed this standalone action instead. Id. ¶¶ 69–70.

### C. Procedural History

Plaintiff now sues Sycomp and NASI, alleging five counts of breach of contract:

- Count One: that Sycomp breached its written PPA, id. ¶¶ 72–81;
- Count Two: that Sycomp breached its written PPA as amended by subsequent oral agreements, id. ¶¶ 82–94;
- Count Three: that NASI breached its written SDA, id. ¶¶ 95–108;
- Count Four: that NASI breached its written SDA as amended by subsequent oral agreements, id. ¶¶ 109–21; and
- Count Five: that both Defendants breached the "Solaris Patching Agreement" that they and Terix entered in March 2013, id. ¶¶ 122–36.

Counts one, three, and five are revised versions of the three counts raised in Plaintiff's original complaint (dkt. 1). The Court dismissed counts three and five in its prior order on Defendants' first motion to dismiss. MTD Order (dkt. 38). Counts two and four are new to Plaintiff's amended complaint.

## II. LEGAL STANDARD

Sycomp and NASI move to dismiss most of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must "accept the plaintiff['s] allegations as true and construe them in the light most favorable to the plaintiff[]," but it need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### III.  DISCUSSION

Sycomp moves to dismiss counts two and five, Sycomp MTD (dkt. 44), while NASI moves to dismiss counts three, four, and five, NASI MTD (dkt. 45).

#### A.  Sycomp: Counts Two and Five

The Court previously dismissed the previous version of count five—count three of Plaintiff's original complaint—against Sycomp because the PPA, Plaintiff's written contract with Sycomp, prevented any subsequent modifications to the contract unless the parties followed certain procedures. MTD Order at 7–8. The Court explained that the "Solaris Patching Agreement" would have constituted an attempt to modify the PPA, but the agreement did not comply with the PPA's modification procedures and therefore could not provide a basis for liability against Sycomp. Id.

At the outset, Plaintiff briefly reraises an argument from its opposition to Sycomp's first motion to dismiss—that the "Solaris Patching Agreement" was actually a new agreement rather than a modification of the PPA. See Sycomp Opp. (dkt. 50) at 13–14. Yet Plaintiff does not allege any new facts that would disturb the Court's prior ruling on that issue. See MTD Order at 7 & n.5 (explaining that the "Solaris Patching Agreement" covers the same kind of services as the PPA). So the Court again holds that the "Solaris Patching Agreement" is nothing more than an attempt to modify the PPA and, as a result, that the PPA's modification provisions apply to determine its validity.

From there, Sycomp contends that counts two and five of Plaintiff's amended complaint fail because any purported amendment to the PPA does not comply with the contract's modification procedures. Sycomp MTD at 8–11. Plaintiff responds that even though it never followed the PPA's modification procedures, the alleged oral modification was valid under California Civil Code § 1698(b). Sycomp Opp. at 13–16. Plaintiff also argues that Sycomp should be barred from relying on the PPA's modification provision under the doctrines of waiver and equitable estoppel. Id. at 16–18. Plaintiff's arguments are not persuasive, however.

**California Civil Code § 1698(b).** California law provides that "[a] contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties." Cal. Civ. Code § 1698(b).[2] Plaintiff argues that section 1698(b) applies because Plaintiff and Sycomp "orally agreed to amend the PPA to perform extra work" and "performed all of the obligations under the agreement as amended." Sycomp Opp. at 15. But even if Plaintiff adequately alleged that Plaintiff and Sycomp reached an oral agreement, Plaintiff fails to establish that the oral agreement was executed—that is, that it was "fully performed." Fanucchi & Limi Farms v. United Agri. Prods., 414 F.3d 1075, 1081 (9th Cir. 2005). To the contrary, Plaintiff asserts that Sycomp breached—in other words, that Sycomp did not execute or fully perform—its oral agreement. That undermines Plaintiff's reliance on section 1698(b). See id. ("[Plaintiff's] own argument defeats its claim under § 1698(b), for it argues that [Defendant] breached its obligation under the oral agreement because it failed to perform the un executed part of the agreement." (emphasis in original)).

Plaintiff cites 1st Olympic Corp. v. Hawryluk, 185 Cal. App. 2d 832 (1960), but that case does not support its position. The parties—a building contractor and a

---

[2] Other provisions of section 1698 state that "[a] contract in writing may be modified by a contract in writing," id. § 1698(a), and that "[u]nless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration," id. § 1698(c). The former does not apply because Plaintiff does not allege a new written contract. And the latter does not apply because the PPA expressly forbids oral agreements, whether or not supported by new consideration. See PPA § 11.17.

7

homeowner—orally agreed that the contractor would provide "extras" in addition to the services they had agreed on in writing. Id. at 840–41. Even though the parties had entered into a written contract that the homeowner would not be charged for extra work unless it was ordered in writing, the court held that the contractor could recover the reasonable value of the "extras" because they were "furnished at the request of the owner, became a part of the construction work generally described in the building contract, and [were] accepted by him." Id. at 841. But the California Court of Appeal repeatedly described its ruling as applying specifically to building contracts—a wholly different context than this case. Id. Allowing a contractor to recover unpaid bills for work that he actually performed (which would also be recoverable on an unjust enrichment theory, as the California court recognized see id.) is not the same as allowing Plaintiff to impose far-reaching indemnification obligations outside the scope of the parties' written agreement.

**Waiver.** "[P]arties may by their conduct waive the requirement of a written contract that no extra work shall be done except upon written order." Howard J. White, Inc. v. Varian Assocs., 178 Cal. App. 2d 348, 353 (1960). To establish waiver, Sycomp must have acted "so inconsistent with the intent to enforce" the PPA's modification provisions "as to induce a reasonable belief that such right has been relinquished." Id. at 355; see also Roman v. Jan-Pro Franchising Int'l, Inc., 342 F.R.D. 274, 291 (N.D. Cal. 2022) ("Waiver is the intentional relinquishment or abandonment of a known right." (citation omitted)). Plaintiff has not alleged facts sufficient to show that Sycomp waived its right to require written modifications. For one, Plaintiff does not identify conduct that would fall outside the scope of the PPA (and thereby require an amendment), as the PPA encompasses the same IT-support services that Sycomp allegedly provided. See PPA § 4.1(a), Ex. D (listing "patches" as a product that Plaintiff could purchase from Sycomp). Furthermore, Plaintiff alleges repeated instances where it and Sycomp exchanged written quotations and purchase orders—a procedure consistent with the PPA's modification requirements. See Am. Compl. ¶¶ 30, 33–34, 48; PPA § 11.17. None of this establishes that Sycomp waived its right to insist on written modifications to the PPA.

8

**Equitable Estoppel.** The doctrine of equitable estoppel applies where "the party to be estopped knew the facts and intended for his conduct to be acted on" if "the party asserting estoppel was ignorant of the true facts and relied on the other party's conduct to her injury." Wong v. Flynn-Kerper, 999 F.3d 1205, 1211 (9th Cir. 2021). Plaintiff argues that Sycomp should be estopped from invoking the PPA's modification provisions because Sycomp "sought to induce and in fact did induce [Plaintiff] to agree to changing the PPA." Sycomp Opp. at 17. As explained above, however, Plaintiff fails to explain how anything Sycomp did constituted a modification to the PPA. Plaintiff's argument also fails because its theory of estoppel—that it was "ignorant of the fact that Sycomp may later claim that it did not intend to alter and vary the terms of the PPA unless the amendments were reduced to writing and signed by both parties," id.—is directly at odds with the PPA itself, which put Plaintiff on notice that Sycomp would require written amendment. See PPA § 11.17. Plaintiff cannot claim ignorance of the plain meaning of contract terms that it signed.

Plaintiff's various attempts to excuse its failure to comply with the PPA's modification provisions are unavailing, so counts two and five fail against Sycomp.

### B. NASI: Counts Three, Four, and Five

The Court previously dismissed Plaintiff's two original counts against NASI—one for a breach of Plaintiff's written contract with NASI (the SDA), and one for a breach of the "Solaris Patching Agreement." As to the written contract, the Court dismissed that count because Plaintiff did not allege how any of the services that NASI agreed to provide under the SDA (hardware support, part exchanges, and telephone support) could have infringed on Oracle's intellectual property rights and thus triggered the SDA's indemnity clause. MTD Order at 4–6. And as for the "Solaris Patching Agreement," the Court dismissed that count because Plaintiff failed to adequately allege several elements of a contract, including mutual assent, definite terms, and consideration. Id. at 8–9.

Plaintiff's amended complaint includes new allegations that flesh out its breach of contract claims against NASI. First, Plaintiff now alleges that NASI recommended obtaining Solaris patches from Terix, which "induced and encouraged" Plaintiff to obtain

those patches from Terix. Am. Compl. ¶¶ 26, 97, 99. This, Plaintiff alleges, is enough to trigger the SDA's indemnity clause on a theory of contributory copyright infringement. Id. ¶ 100. Second, Plaintiff alleges that NASI "assisted" it in its efforts to obtain the Solaris patches from Terix. Id. ¶¶ 38, 40, 112–13, 123–24. Plaintiff asserts that this is enough to allege an implied-in-fact contract that amended the SDA. See NASI Opp. (dkt. 51) at 17–19. Third, Plaintiff alleges that NASI was aware of and did not object to various communications regarding the scope of its indemnification obligations. Am. Compl. ¶¶ 27, 30–32, 47–48, 116. Plaintiff argues that this gave other speakers ostensible authority to bind NASI. See NASI Opp. at 16–17.

None of Plaintiff's new allegations are sufficient to make out a breach of contract claim against NASI.

### 1. Contributory Copyright Infringement

As the Court has already explained, the SDA's indemnification provision states that NASI must indemnify Plaintiff in the event that any of the "Services" enumerated in the SDA "infringe or misappropriate the [intellectual property rights] of any third party." SDA § 13.0. And none of the services that NASI provides under the SDA—"On Site Hardware Support," "Shared Maintenance," "Operating System Software Support," or "Telephone Technical Support"—could have directly infringed on Oracle's intellectual property rights. See MTD Order at 5–6. Plaintiff now argues that this does not matter because NASI's recommendation that Plaintiff use Terix's Solaris patches constitutes infringement on an inducement theory. Am. Compl. ¶ 99; NASI Opp. at 12–13. But Plaintiff does not allege the requisite facts to support this theory.

A defendant can be liable for another's copyright infringement under several different theories. Plaintiff raises one: that NASI's recommendations induced it to infringe Oracle's copyright and therefore constitute contributory infringement. Contributory infringement occurs when a defendant "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 795 (9th Cir. 2007).

10

1    At the outset, Plaintiff does not adequately allege that NASI knew of its (or Terix's) infringing activity. Plaintiff repeatedly alleges that NASI was aware of certain representations made by Terix, including that Terix had licenses for the Solaris patches, but Plaintiff alleges no factual basis for NASI's awareness of these representations. Plaintiff's allegations are therefore too conclusory to survive a motion to dismiss. See Iqbal, 556 U.S. at 678. Even if NASI were aware of Terix's representations, though, that would not be enough to show that NASI knew of infringing activity without an allegation that NASI knew that Terix did not have the licenses it purported to. And on top of all that, NASI had reason to believe that Plaintiff either had the necessary licenses or would take steps to obtain them given the following provision of the SDA: "Customer [Plaintiff] is responsible for maintaining all appropriate hardware and software licenses (if applicable) with the Original Equipment Manufacturer." SDA § 4.2. While the Court sees no need to determine whether this provision precludes Plaintiff's contract claims in their entirety, it certainly undermines Plaintiff's contributory infringement theory.

Plaintiff is also unable to establish the other prong of contributory copyright infringement—that NASI induced the infringement.[3] Plaintiff has not adequately alleged that NASI "provid[ed] a service 'with the object of promoting its use to infringe copyright.'" Perfect 10, 494 F.3d at 801 (quoting Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 936–37 (2005)); see also id. ("to establish inducement liability, it is crucial to establish that the distributors 'communicated an inducing message to their users'" (cleaned up) (quoting Grokster, 545 U.S. at 937)). First, NASI did not provide a service, product, or device that could be used to infringe the intellectual property rights of a third party. See Columbia Pictures Indus., Inc. v. Fung, 710 F.3d 1020, 1032–33 (9th Cir. 2013) (requiring "the distribution of a device or product"—or a service—that

---

[3] Though Plaintiff does not argue that NASI's recommendations materially contributed to copyright infringement, the Court notes that such a theory would not be viable. Neither those recommendations nor any of the other services that NASI provided Plaintiff under the SDA are directly connected to the alleged infringement. See Perfect 10, 494 F.3d at 796. For instance, the SDA did not require NASI to obtain, control, or distribute the infringing Solaris patches. See id. at 796–801 (listing examples of material contribution).

11

can infringe copyright to prove inducement). Second, as already explained, Plaintiff has not alleged facts to establish that NASI knew that Terix lacked the licenses to provide Solaris patches, let alone that NASI had the intent to induce copyright. See id.; Perfect 10, 494 F.3d at 801. The mere fact that NASI's recommendations caused Plaintiff to obtain Solaris patches from Terix and, by doing so, infringe on Oracle's copyright is not enough for inducement liability. See Grokster, 545 U.S. at 937 ("The inducement rule [] premises liability on purposeful, culpable expression and conduct.").

Because Plaintiff does not allege facts sufficient to establish that NASI's recommendations constitute contributory copyright infringement, Plaintiff has failed to allege that NASI's services (as described in the SDA) infringed on a third party's intellectual property rights. That dooms count three of Plaintiff's amended complaint.

### 2. Implied-in-Fact Contract

Plaintiff's fourth and fifth counts—which allege breach of the SDA as amended and the "Solaris Patching Agreement," respectively—rely on Plaintiff's assertion that NASI's conduct in March and April 2013 shows that NASI and Plaintiff agreed to amend the SDA. In essence, Plaintiff alleges the existence of an implied-in-fact contract. See Cal. Civ. Code § 1621 ("An implied contract is one, the existence and terms of which are manifested by conduct."); Foley v. Interactive Data Corp., 47 Cal. 3d 654, 681 (1988) (implied-in-fact contracts "may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances"); Ret. Emps. Ass'n of Orange Cnty., Inc. v. County of Orange, 52 Cal. 4th 1171, 1178 (2011) ("a contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words'"). "Even when a written contract exists, 'evidence derived from experience and practice can [] trigger the incorporation of additional, implied terms.'" Ret. Emps. Ass'n, 52 Cal. App. 4th at 1178–79 (citation omitted) (cleaned up). That said, an implied-in-fact contract "must be founded upon an ascertained agreement of the parties to perform it," and "[a]lthough an implied in fact contract may be inferred from the 'conduct, situation or mutual relation of the parties,

the very heart of this kind of agreement is an <u>intent</u> to promise.'" <u>Zenith Ins. Co. v. O'Connor</u>, 148 Cal. App. 4th 998, 1010 (2007) (emphasis in original) (citation omitted).

It is here that Plaintiff's argument fails, as Plaintiff does not allege sufficient facts to show that the parties mutually intended that NASI itself would provide Solaris patches. Plaintiff alleges that NASI "assist[ed]" in obtaining and delivering the patches, Am. Compl. ¶¶ 38, 40, but it does not explain in any detail <u>how</u> NASI did so (beyond recommending the patches in the first place). For instance, Plaintiff does not allege that NASI acted as a middleman between Plaintiff and Terix to transfer the patches, or that NASI ever even possessed the patches. <u>Compare</u> <u>Foley</u>, 47 Cal. 3d at 681 (finding an implied employment contract requiring good cause for termination based on "repeated oral assurances of job security and consistent promotions, salary increases and bonuses"). Plaintiff's handful of conclusory allegations are too vague to successfully plead an implied contract. <u>See</u> <u>Guz v. Bechtel Nat'l Inc.</u>, 24 Cal. 4th 317, 337 (2000) (requiring "an actual mutual understanding on <u>particular</u> terms and conditions" (emphasis in original)).

Plaintiff's conclusory allegations of a "Sycomp/NASI/Terix partnership" or a "NASI/Terix team," Am. Compl. ¶¶ 27, 29, 38, 40, likewise fail to allege an implied-in-fact contract among all four parties. As the Court explained in its earlier order, Plaintiff does not allege facts showing that the four parties agreed to the partnership all on the same terms. <u>See</u> MTD Order at 8–9 (citing <u>Smith v. 9W Halo W. OpCo L.P.</u>, No. 20-cv-1968-PJH, 2023 WL 6047383, at *3 (N.D. Cal. Apr. 20, 2023)). Nor does Plaintiff consistently describe the purported partnership—sometimes suggesting that only NASI and Terix were partners and other times suggesting that Sycomp, NASI, and Terix were all partners. <u>See</u> <u>id.</u> at 8 (citing <u>Kuhn v. Three Bell Cap.</u>, 698 F. Supp. 3d 1119, 1124 (N.D. Cal. 2023)). Finally, Plaintiff's new allegations that NASI would receive some share of Plaintiff's payment to Terix for the Solaris patches, Am. Compl. ¶¶ 35–36, 39, does nothing to clarify what additional contractual terms (if any) NASI implicitly agreed to.[4]

---

[4] Plaintiff alleges that NASI and Terix were parties to a "Reseller Agreement" under which NASI would "offer[] TERiX services to [NASI]'s customers" in exchange for a 10%

13

At bottom, Plaintiff's allegations about NASI's conduct are too vague and conclusory to imply that NASI agreed to expand its obligations under the SDA.

### 3. Ostensible Authority

Plaintiff's final attempt to impose liability on NASI is to allege that Sycomp and Terix had ostensible authority to bind NASI to their representations—specifically, Sycomp's representation that the quote for the Solaris patches was "subject to [the terms of the] Symantec/NASI/Sycomp Master Agreement, id. ¶¶ 30, 33, and that "NASI/Terix agent covers indemnification," id. ¶ 47. Once again, Plaintiff starts from a sound legal principle but fails to allege the facts necessary for that principle to apply in this case. Of course an agent can bind a principal, either through the agent's actual authority or through ostensible agency. "Actual authority is the authority the principal intentionally confers upon the agent or allows the agent to believe that he possesses. Ostensible authority, on the other hand, is the authority of the agent which the principal causes or allows a third person to believe that the agent possesses." Van Den Eikhof v. Hocker, 87 Cal. App. 3d 900, 905 (1978) (citations omitted).

Plaintiff does not allege that NASI intentionally gave Sycomp or Terix authority to revise the SDA's terms or otherwise bind it with respect to Plaintiff.[5] Nor does Plaintiff satisfactorily allege that NASI caused or allowed Plaintiff to believe that Sycomp or Terix had such authority. All Plaintiff alleges is that NASI knew of Sycomp's and Terix's representations regarding the scope of NASI's contractual obligations (especially with respect to indemnity) and did not say anything. See Am. Compl. ¶¶ 27, 29, 31, 33, 47. But Plaintiff never alleges how NASI could have known of most of these representations,

---

commission. Am. Compl. ¶ 35. The existence of this agreement, which Plaintiff was not a party to, neither implies new terms in the SDA nor implies the existence of a "Solaris Patching Agreement." Plaintiff does not allege that NASI actually sold Solaris patches or Terix's services, only that NASI recommended those patches and services. Id. ¶ 25. That is consistent with, not separate from, what the SDA already provides.

[5] Plaintiff states in its opposition to NASI's motion to dismiss that "NASI and Terix permitted Rakich [of Sycomp] to address questions of contracting and identification." NASI Opp. at 16. Plaintiff does not identify where in its amended complaint it alleged as much; indeed, Plaintiff never actually alleges that NASI permitted Sycomp (or Terix) to speak on its behalf, let alone with enough specificity to survive a motion to dismiss.

which were made on phone calls and email threads with no NASI representative present. They are thus too conclusory to survive a motion to dismiss.  See Iqbal, 556 U.S. at 678. The only communications that Plaintiff adequately alleges NASI's knowledge of are:

- An April 9, 2013 PowerPoint presentation in which Sycomp, NASI, and Terix representatives were all present, and at which NSAI represented that it was a "Terix reseller[] with 'over 10 years of partnership.'" Id. ¶ 35 (cleaned up).
- An April 10, 2013 email from Terix to Plaintiff, Sycomp and NASI saying, "Thank you again from Sycomp, NASI, and Terix for the new business." Id. ¶ 37.
- An April 18, 2013 email from Rakich (of Sycomp) to NASI and Terix asking, "Who's covering [indemnity]?  Does the NASI agreement attached?" Id. ¶ 46.[6]

None of these interactions is enough to establish ostensible authority for either Sycomp or Terix to expand or modify NASI's contractual obligations to Plaintiff.  Thus, Plaintiff fails to adequately allege a modified SDA or a new "Solaris Patching Agreement" that binds NASI to more extensive indemnity provisions than those in the written SDA.

## IV. CONCLUSION

The Court **GRANTS** Defendants' motions to dismiss in full.  Though Plaintiff raised some new legal theories, the flaws in its amended complaint are essentially the same as those in its original complaint.  The Court therefore **DISMISSES WITH PREJUDICE** counts two, three, four, and five of Plaintiff's amended complaint.  See Pearson v. California, No. 20-cv-5726-CRB, 2022 WL 1225014, at *2–3 (N.D. Cal. Apr. 26, 2022) (repeated failure to allege specific facts justified denial of leave to amend as futile).

**IT IS SO ORDERED.**

Dated: January 6, 2025



CHARLES R. BREYER
United States District Judge

---

[6] Conspicuously absent from Plaintiff's amended complaint is any allegation that NASI responded in the affirmative—or at all—to Rakich's email.  And although Rakich assured Plaintiff that the SDA covered indemnity for the Solaris patches, Plaintiff does not allege facts (as opposed to conclusions) to establish that NASI was aware of this statement.